Appellant, Anthony Coles, appeals from the judgment of the Montgomery County Common Pleas Court which affirmed the decision of the Ohio Unemployment Compensation Board of Review to deny appellant unemployment benefits.
On February 8, 1996, Coles was discharged from his employment with Supervalu Holdings, Inc. (hereinafter Supervalu). On March 11, 1996, the appellant's initial application for unemployment compensation was granted by the Administrator of the Ohio Bureau of Employment Services ("Administrator"). Supervalu's request for reconsideration of the initial determination was subsequently disallowed.
Supervalu then filed an appeal to the Board of Review. On October 18, 1996, an evidentiary hearing was held before a Hearing Officer for the Board of Review. On October 30, 1996, the Hearing Officer issued a decision reversing the Administrator. The Hearing Officer held that the Claimant had been discharged for just cause in connection with work under the purview of R.C.4141.29(D)(2)(a).
Appellant then filed an application to institute further appeal before the Board of Review. However, the Board of Review denied further appeal. Appellant then appealed to Montgomery County Court of Common Pleas. On July 25, 1997, that court affirmed the decision of the Board of Review and further found that this decision was not unlawful, unreasonable, or against the manifest weight of the evidence. This appeal followed.
The appellant was employed by Supervalu Holdings from July 10, 1995, until February 8, 1996 where he worked as a clerical accounting alternate.
On February 8, 1996, the appellant was informed by his supervisor, Jeffrey Daufel, that he was discharged for refusing to perform work as instructed by his supervisor. Daufel was appellant's supervisor during the entire period of claimant's employment.
The appellant was instructed to highlight 30, 60 and 90 day products a certain way on the weekly merchandise purchase order exception report (Tr. 12). Despite these instructions, appellant used his own method to fill out the reports. The appellant told his supervisor, Mr. Daufel, that Mr. Daufel's way was inefficient and his (appellant's) way was better (Tr. 12). Daufel told him that he needed to prepare this report as instructed or he would be placed on probation or terminated (Tr. 15). He said appellant continued to disregard his instructions (Tr. 15).
According to the company policy, the appellant had authority to equalize a $10.00 loss or $50.00 gain (Tr. 15-16). However, the appellant would spend time going after as little as a 10% loss (Tr. 16). Appellant told Daufel he was incorrect and that he had to reconcile everything under company policy. Appellant was also responsible for compiling a list of outdated merchandise that was to be furnished to Mr. Daufel. Again, the appellant did it his own way and not the way requested by Daufel (Tr. 21).
There were formal meetings between appellant and Mr. Daufel on job performance expectations on October 16, 1995, October 26, 1995, October 31, 1995, November 1, 1995, December 7, 1995, and January 22, 1996 (Tr. 14).
At the meeting on January 22, 1996, the appellant was instructed that he should complete his reports exactly like a co-worker. The appellant was told that if he needed more training he should contact his co-worker and he would receive it (Tr. 14, 23).
At a meeting on January 29, 1996, the appellant was asked by Daufel if he needed additional training. The appellant indicated he did not (Tr. 15). The appellant was told to perform work as he had been instructed (Tr. 15).
Mr. Schulcz, the Human Resources Manager, spoke with the appellant after the January 29, 1996, meeting about the problems (Tr. 38). Schulcz asked the appellant if he understood what he needed to do. The appellant indicated that he did. Mr. Schulcz just wanted to make sure that the appellant understood the gravity of the matter. Schulcz was sure that the appellant did understand what was required Tr. 39).
At a meeting on February 2, 1996, the appellant was once again informed by Mr. Daufel that he had to perform work as instructed (Tr. 15). The appellant again stated that Mr. Daufel's way was inefficient and that his way was better (Tr. 15).
On February 8, 1996, the appellant was still performing work his way and he was discharged (Tr. 40).
Appellant testified the first time he and Daufel talked about the audit report was January 29, 1996. He denied ever telling Daufel that the reason he wasn't following Daufel's instructions was because his methods were inefficient (Tr. 52).
Appellant testified he had an "intense" meeting with Daufel on February 2, 1996 concerning preparation of the audit reports and he informed Daufel he was following the procedures outlined by the Controller, Sandy Holmes (Tr. 53).
Appellant testified the first time he and Daufel talked about the audit reports was January 29, 1996. He denied ever telling Daufel that the reason he wasn't following Daufel's instructions was because his methods were inefficient (Tr. 52).
Appellant testified he had an "intense" meeting with Daufel on February 2, 1996 concerning preparation of the audit repots and he informed Daufel he was following the procedures outlined by the Controller, Sandy Holmes (Tr. 53).
The hearing officer made the following findings of fact at the conclusion of the hearing:
 Claimant was employed by Supervalu Holdings from July 10, 1995, until February 8, 1996. Claimant worked as a clerical accounting alternate.
 On February 8, 1996, the claimant was informed by Mr. Daufel that he was discharged for refusing to perform work as instructed by his supervisor. Mr. Daufel was claimant's supervisor during the entire period of claimant's employment.
 The claimant was instructed to highlight 30, 60 and 90 day products a certain way on the weekly merchandise purchase order exception report. The claimant used his own way to fill out the reports. The claimant told Mr. Daufel that Mr. Daufel's way was inefficient and his (claimant's) way was better.
 The claimant had authority to equalize a $10.00 loss or $50.00 gain. The claimant would spend time going after as little as $.10. The claimant told Mr. Daufel that Mr. Daufel was incorrect and that he had to reconcile everything under company policy.
 On another matter there was a listing of outdated merchandise that was to be furnished to Mr.Daufel. Again the claimant did it his own way and not the way requested by Mr. Daufel.
 There were formal meetings between claimant and Mr. Daufel on job performance expectations on October 16, 1995, October 26, 1995, October 31, 1995, November 1, 1995, December 7, 1995, and January 22, 1996. At the meeting on January 22, 1996, the claimant was instructed that he should do the reports as a co-worker, Connie did. The claimant was told that if he needed more training he should contact Connie and he would receive it.
 At a meeting on January 29, 1996, the claimant was asked by Mr. Daufel if he needed additional training. The claimant indicated he did not. The claimant was told to perform the work as he had been instructed. At a meeting on February 2, 1996, the claimant was informed by Mr. Daufel that he had to perform the work as instructed. Claimant again stated that Mr. Daufel's way was inefficient and that his way was better. On February 8, 1996, claimant was still performing the work his way and he was discharged.
 Mr. Schulcz spoke with the claimant after the January 29, 1996, meeting about the problems. The claimant was asked by Mr. Schulcz if he understood what he needed to do. The claimant indicated that he did. Mr. Schulcz just wanted to make sure that the claimant understood the gravity of the matter. He was sure that the claimant did understand what was required.
In finding that the claimant's discharge was based on fault and misconduct, the hearing officer found that the evidence demonstrated that the claimant refused to perform his job duties in the manner in which he was instructed.
In affirming the Board of Review, the trial court found that the decision was supported by competent, credible evidence and was not against the manifest weight of the evidence. The trial court noted further:
 It is clear from the record below that the Board of Review's decision is not against the manifest weight of the evidence. The Board in its decision specifically pointed to the evidence that it considered just cause for discharge. The Board of Review considered Appellants' refusal to perform work as requested, refusal of further training, and failure to take advantage of available opportunities to modify his job performance. Appellant claims that he was prejudiced by the Board of Review's refusal to hear his witnesses. The Board, however, specifically stated on the record that testimony from the witnesses was not relevant because they were not his supervisors but simply fellow employees. The Board further found that any testimony from these witnesses would be duplicative and thus, unneeded. In regard to documents that Appellant wanted to submit in his favor, the Board review all subpoenaed evidence it had at the time of the hearing and admitted it into the record. After consideration of the record below and the briefs of both parties, the Court finds that the Board of Review's determination that Appellant was discharged for just cause was supported by competent, credible evidence.
The appellant has raised five assignments of error, four of which contend the trial court's judgment was against the manifest weight of the evidence.
R.C. 4141.28(O) provides that if a court finds that the decision of the Review Commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision, or it modify such decision and enter final judgment. The decision of purely factual questions is primarily within the province of the referee and the board of review.Brown-Brockmeyer Co. v. Roach (1947), 148 Ohio St. 511, 518. Judgments supported by some credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279. The reviewing court was the common pleas court. This court's role is then limited to a determination of whether the trial court abused its discretion. Angelkovski v. Buckeye Potato Chips Co.
(1983), 11 Ohio App.3d 159. Abuse of discretion connotes the judgment was unreasonable. It is also well established that for an employee to be discharged with just cause, the employee in some way must be at fault. Lee v. Nick Mayer Lincoln (1991), 74 Ohio App.3d 306. One court has held that lack of effort or an unwillingness to conform to the rules of the employer is just cause for the denial of benefits. In re Krug (Aug. 23, 1977), Franklin App. 77-AP-266, unreported.
There is certainly evidence in this record to support the administrative board's findings that the appellant continually failed to follow his supervisor's instructions as to how to prepare company reports. There was also evidence to support the Board's findings that appellant was offered assistance in the preparation of these reports but rejected such assistance. The appellant's first four assignments of error are overruled.
In his last assignment, appellant contends the hearing officer erred in denying him the opportunity to present the testimony of two witnesses. The appellant's brief is difficult to follow. He asks us to refer to the argument he advanced in the trial court.
The following occurred at the completion of the employer's case:
HEARING OFFICER: Okay, who is Mr. Green?
MR. COLES: Oh, he's a surprise witness.
HEARING OFFICER: Who is Mr. Green?
MR. COLES: You gonna answer that John or you want me to.
 HEARING OFFICER: No. Mr. Coles, I'm askin' you. Who is Mr. Green?
 MR. COLES: Mr. Green happens to be an employee of Supervalu.
HEARING OFFICER: He's a what?
MR. COLES: An employee.
HEARING OFFICER: Okay. Did he work with you?
MR. COLES: No. He didn't.
HEARING OFFICER: What would he testify to today?
 MR. COLES: That's something else I wanted to bring to your attention. (Indiscernible)
 HEARING OFFICER: First of all, this is not a star chamber proceeding and we don't do that.
MR. COLES: Okay.
 HEARING OFFICER: What would he testify to today Mr. Coles?
 MR. COLES: He would testify that I delivered to him some audits of Cheryl's and mine. And he would testify that I asked him to compare these two audits, in other words tell me if they're not the same. Was I not doing it like Cheryl done — did it.
HEARING OFFICER: What was Mr. Green's position?
 MR. COLES: He — I'm not sure what it was. I think he was — I'm not sure exactly what he was doin'. He just worked in the office with me.
 HEARING OFFICER: I'm gonna rule that he's not gonna be relevant material. What about Ms. Stanford? MR. COLES: She happens to be a person who used to do my job too. And she'll testify that there's no set way of doin' this — no, uh — (Hearing Officer interrupts)
HEARING OFFICER: She was not there when you were there?
MR. COLES: She was there. But she also did my job.
 HEARING OFFICER: Well sir I have testimony from you on the performance of your job. I have testimony from Mr. Daufel. Was she a supervisor or just a co-worker?
MR. COLES: Co-worker.
 HEARING OFFICER: Okay. I'm not gonna take her testimony either. If you would contact both of them after the hearing Mr. Umm — do you have their numbers Mr. Coles or —
MR. COLES: Yeah I do.
 HEARING OFFICER: Okay. If you'd contact `em and tell him we're not gonna use `em and thank `em for calling in, I'd appreciate it.
Appellant failed to demonstrate to the hearing officer or this court the relevance of Mr. Green's testimony and how he was prejudiced by the hearing officer's ruling. The fact that appellant performed his audits in the same manner as his predecessor, Cheryl, is not relevant to whether appellant complied with the instructions of his supervisor, Jeffrey Daufel. The following excerpt from Jeffrey Daufel's testimony is instructive:
 Q. Okay. Did Mr. Coles at any time tell you that he already knew the process?
 A. Yes. When we first start having trouble with — trying to re-train Anthony, I went — I wanted to at that point I told him that I thought he needed some re-training. And he told me that he already knew how to do it, that he was choosing not to. But Cheryl (phonetic) had trained him when she was there and his way was more effective than hers. At that point I start telling him that it wasn't Cheryl's way, that she was doin' it, it was my way. And I wanted it done that way.
Q. Thank you. That's all.
Appellant contended to the hearing officer that Ms. Stanford's testimony was relevant because she is a co-worker who used to do his job and "there's no set way of doing this." (Tr. 73). Again appellant failed to proffer how he was materially prejudiced by the hearing officer's ruling. The fifth assignment of error is also overruled.
The judgment of the trial court is Affirmed.
FAIN, J., and GRADY, J., concur.
Copies mailed to:
Anthony Coles
Keith P. Spiller
Betty D. Montgomery
David E. Lefton
Hon. Adele Riley